SHUGG, APPELLANT, v. ANACONDA COPPER MINING CO., RESPONDENT.

(No. 7,416.)

(Submitted May 28, 1935. Decided June 8, 1935.)

[46 Pac. (2d) 435.]

*Mr. H. A. Tyvand,* for Appellant, submitted a brief and argued the cause orally.

*Mr. D. M. Kelly, Mr. D. G. Stivers, Mr. John V. Dwyer, Mr. John A. Groenevelt* and *Mr. J. T. Finlen, Jr.,* for Respondent, submitted a brief; *Mr. Finlen* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Edwin S. Shugg has appealed from a judgment of dismissal, "on the merits," of his appeal from an order of the Industrial Accident Board denying him additional compensation on the ground of want of jurisdiction. The history of the case is rather

involved, as will be seen from the following statement from the record:

Shugg had been in the employ of the defendant company for eighteen years, when, on June 2, 1930, he sustained compensable injury. The "Attending Physician's Report" made to the board by Dr. J. C. Shields, on June 19, 1930, gives the nature of the injury as "contusion and sprain of left foot and contusion of right shoulder," and adds: "Probable period of disability 3—4 weeks." The "Employer's Report" is of like tenor. The injured man filed his claim for compensation on July 14, 1930, wherein he describes the accident as follows: "Timbering, falling rock struck my left leg and injured it"; a like statement is found in the "Employer's Report."

The company paid the claimant $15 per week for a period of sixty-eight weeks at the end of which it secured from him a receipt "in full settlement and satisfaction" of his claim for the injury described as "contusion and sprain of left foot and contusion of right shoulder." This receipt was signed by the claimant and approved by the company on September 23, 1931. It was filed with the board the following day, with the company's supplemental report advising the board that the injured man had fully recovered and had returned to work on September 22, 1931.

In October, 1931, the claimant made application for additional compensation on the ground that he was still disabled by reason of the accident. The company resisted on the ground that he was suffering from flat feet and that this constituted his only disability. A hearing was had on March 17, 1932, at which the claimant and one Dr. T. B. Moore testified for the claimant, and Dr. J. C. Shields, who made the "Attending Physician's Report" above, testified for the company. No testimony was adduced as to the nature of the accident. The claimant explained his then condition of flat feet and pain in both feet and legs, with the left leg slightly smaller than the right, as rendering him totally disabled, and testified that he had had no trouble with his feet prior to the accident.

Dr. Moore described claimant's condition as due to "flat feet" and "progressive arthritis," totally disabling him as a miner, but could not say whether or not the injury sustained had anything to do with his condition. He testified that one could have flat feet without pain or much disability, but it was the combination of the two afflictions which caused claimant's condition.

Dr. Shields testified that he examined the claimant on the day of the accident and that he then had "complete flat feet," was injured only in the left foot and leg, and that there was no injury to bones or ligaments, but that claimant then complained of pains in his right leg also. He testified that the slight atrophy of the left leg was due to nonuse, and that all of the symptoms related by the claimant, and his condition as exhibited at the hearing, "arise exclusively from flat feet."

On July 14, 1932, with the record of the hearing, the report and final receipt of and for the amount already paid to the claimant before it, the board declared that it was "of the opinion that, following the healing period or after the time that Shugg passed from a total disability of a temporary character that there was a small amount of permanent partial disability to the left foot," but added: "We think that the defendant company has paid all of the compensation that would be due for the partial disability in addition to paying Shugg compensation during the time he was temporarily disabled." On its findings the board ordered the company to pay the claimant $15 per week for sixty-eight weeks, beginning with the date of the accident, with full credit for payments already made, "to be in full and final settlement." No appeal was taken from this order and no motion for a rehearing was filed, as permitted by section 2955 of the Revised Codes of 1921, within twenty days after the service of the order of the board. .

On May 27, 1933, the claimant filed with the board a "petition to set aside the former order and to grant a hearing again." This petition was presented by present counsel for Shugg, who did not represent him theretofore. Therein it is alleged that Shugg's injuries resulted when, on June 2, 1930, "a great

amount of rock and dirt fell upon his shoulders and back, placing such a large amount of weight'' upon him that both his feet were injured by the breaking of the arches, wounds and sprains, and that ''his feet and legs are now partially paralyzed and becoming more paralyzed and affected as time passes.'' Claimant further alleges that he has not received or accepted full settlement of his claim for compensation. The prayer is that the order of July 14, 1932, be set aside, the case reopened, and the matter ''heard again'' and claimant awarded compensation for total disability permanent in character. To this petition the company filed a demurrer, on the grounds that the petition does not state facts sufficient to constitute a cause of action, and that the board has no jurisdiction of the person of the defendant or of the subject of the action.

In an order dated May 29, 1933, the board recites the former proceedings leading up to the order of July 14, 1932, with its service on counsel for claimant, that no appeal was taken and no motion for a rehearing made, and holds that it was without jurisdiction to grant a new hearing. No appeal was taken from this order of the board, but on June 17, 1933, claimant presented to the board ''a petition for a hearing and rehearing,'' in which it is charged that the board acted without authority in dismissing the former petition without a hearing on the demurrer, and has, at no time, granted claimant a right to be heard in order to determine his condition subsequent to March 17, 1932, and that the order of July 14, 1932, is ''unreasonable.''

On June 20, 1933, the board wrote counsel reviewing the history of the latest attempt to secure a new hearing and the result thereof, and closing with the statement: ''In view of the facts in the case the board feels that it has no authority to consider an application for a rehearing at this time. You may take this letter as a refusal of the board to assume any further jurisdiction in the case.''

On July 19, 1933, claimant gave notice of appeal to the district court, which appeal was, on motion of the company, dismissed

on January 6, 1934. No appeal was taken from the judgment of dismissal.

On January 11, 1934, claimant filed with the board a "petition to reopen and review this case and to award additional compensation." This petition in effect seeks to have the board blot out all that has gone before, and cause the case to "be heard again" on the theory of injury on June 2, 1930, by reason of "a great amount of rock and dirt" falling on his back in such manner as to crush him down and break the arches of both of his feet.

To this petition the company filed an answer, admitting that the claimant was injured on June 2, 1930, by rock falling on the left leg, and that the injury consisted of "a contusion and sprain of the left foot and contusion and sprain of the right shoulder"; it alleges the payments made and full recovery of the claimant with his request to return to work; his receipt for full settlement, the lapse of more than two years, and that the board has no power to alter, rescind, or amend the settlement. It further alleges the order of July 14, 1932, and the judgment of dismissal on May 29, 1933, from which no appeals were taken, became *res adjudicata* and bar this proceeding. By reply the claimant denied the new matter set up in the answer.

This matter being presented to the board, it denied the petition and dismissed the proceeding by an order in which is recited the fact that the decision of July 14, 1932, was based on medical evidence presented on behalf of the claimant with respect to "the disability of the left foot," stating: "There was no contention by the claimant of any injury other than to the left foot"; that this "petition does not inform the board as to what additional disability there is, if any, nor does it inform the board as to what increase in disability has taken place." The board then declares: "We believe that the claimant is not entitled to have a hearing for the purpose of being awarded additional compensation unless a petition is presented with supporting medical statements that the disability which Edwin S. Shugg is now suffering is different entirely from that suffered at the

time of the former hearing." This order of dismissal was made February 27, 1934.

On March 13, 1934, claimant filed a "petition for hearing and rehearing," which was promptly denied on the insufficiency of the grounds stated. Claimant thereupon appealed to the district court, and in due time the company moved to dismiss the appeal. The court overruled the motion *pro forma,* granted claimant's motion to produce additional evidence, over the objections of the defendant, considered the record made before the board, heard additional evidence, and thereafter entered its judgment of dismissal on the ground that the court was without jurisdiction in the matter.

Counsel for the claimant contends that this judgment, from which this appeal is taken, is erroneous in that the petition dismissed by the board was properly filed under the provisions of section 2956, Revised Codes of 1921, which reads as follows: "Nothing contained in the preceding section shall, however, be construed to limit the right of the board, at any time after the date of its award, and from time to time after due notice and upon the application of any party interested, to review, diminish, or increase, within the limits provided by this Act, any compensation awarded upon the grounds that the disability of the person in whose favor such award was made has either increased or diminished or terminated."

The "preceding section" to which reference is made provides that "at any time within twenty days after the service of any order or decision of the board, any party or parties aggrieved thereby may apply for a rehearing upon one or more of the following grounds, and upon no other grounds.  *  *  *  " (Sec. 2955, Id.) The grounds upon which a rehearing may be demanded are those going to the merits of the order or decision rendered, and such an application challenges the jurisdiction of the board, the sufficiency of the evidence to support the findings, or raises questions of fraud, newly discovered evidence, or that the order is, on the showing made, "unreasonable." Under section 2955, therefore, the aggrieved party is

in the same position as one moving for a new trial in an ordinary case, and his application relates only to the condition and situation prevailing at the time of the original hearing.

If, after the order is made, there is a change in the claimant's ▆ condition rendering the original order inapplicable to the then existing condition of the injured party, the board may, upon application of any interested party, review the matter, hear further evidence, and modify the original order to meet the present situation, without regard to either time provision or the grounds of rehearing specified in section 2955, above. (*Woin* v. *Anaconda Copper Min. Co.*, 99 Mont. 163, 43 Pac. (2d) 663.)

Here, although the claimant does allege that his condition has ▆ gradually grown worse, it is not on the ground of change that he sought a new hearing, but on the ground that his original sworn claim and his original proof of injury did not conform to the facts and that the original order was "unreasonable"; he sought to have all former proceedings and orders wiped out, and a hearing anew on an entirely different theory of the nature of the injury suffered. Such action is not contemplated by the board's granted power to make adjustment of compensation to meet changed conditions (sec. 2924, as amended, sec. 6, Chap. 177, Laws of 1929), or by the provisions of the Act vesting "continuing jurisdiction" in the board, as it originally existed (sec. 2952, Rev. Codes 1921); and even if we were to hold that the last-cited section was broad enough to permit such a renewed application for compensation on a new theory of injury, the claimant here would be barred by the proviso that "the Board shall not have power to rescind, alter, or amend any final settlement or award of compensation more than two years after the same has been made." (Sec. 9, Chap. 177, above.)

Counsel for claimant contends that the final settlement made ▆ in 1931 was void and does not bring this case within the above-quoted proviso, because not approved by the board before it was agreed upon. He relies upon the closing paragraph of section 2926, Revised Codes of 1921, which reads: "The board is hereby vested with full power, authority, and jurisdiction to

compromise claims and to approve compromises of claims under this Act; and all settlements and compromises of compensation provided in this Act shall be absolutely null and void without the approval of the board.'' Had a claim been definitely established in favor of this claimant, and thereafter he and the company had entered into a compromise agreement, i. e., an agreed settlement reached by mutual concessions—a reciprocal abatement of extreme demands—it would have been unenforceable without the approval of the board, but here we have no compromise. The receipt given was in full settlement of claimant's demands, if, as recited therein, he was then fully recovered and had gone back to work, and this settlement was approved by the board by its order of July 14, 1932, declaring that the claimant was entitled to just what he had received and receipted for.

If it be conceded that the petition to reopen the case states facts sufficient to invoke the continuing jurisdiction of the board, the appeal here taken was an inappropriate method of attempting to have the changed condition of the injured party determined. Original jurisdiction to determine all questions of fact with respect to awards of compensation is vested in the board (sec. 2947, Rev. Codes 1921), and the board has never heard or determined the question as to whether or not new developments in the claimant's condition warrant further award of compensation. . The board only determined the preliminary question of law as to jurisdiction, and refused to act; it would seem, therefore, that the proper remedy would have been mandamus to compel the board to act (*State ex rel. Loney* v. *Industrial Accident Board*, 87 Mont. 191, 286 Pac. 408), for the power of the court on appeal is that of review to determine ''whether or not the findings of the board ought to be sustained, and whether or not such findings are reasonable under all the circumstances of the case.'' (Sec. 2960, Rev. Codes 1921; *Willis* v. *Pilot Butte Min. Co.*, 58 Mont. 26, 190 Pac. 124.) Here there was nothing for the court to review; it was called upon to, and did, hear the case *de novo,* but then decided that it was without jurisdiction to determine the matter of which it had thus assumed original jurisdiction.

If the claimant was originally, by reason of the accident, in the condition in which he now says he was, he should have so shown on the original hearing, or if, through some inadvertence, he was then prevented from so doing, he should then, within twenty days after notice of the order, have moved for a rehearing or he should have appealed from the order of July 14, 1932, within the time designated by the statute. (*State ex rel. Murasky* v. *State Compensation Commr.*, 109 W. Va. 218, 153 S. E. 509.)

In hearing and determining claims for compensation the board performs judicial functions; it is the poor man's court, or *rusticum forum*, wherein a claimant may present his cause without the assistance of counsel, and, therefore, the strict rules of pleading and practice should not be applied. The Act calls for speedy adjustment of accident cases, regardless of technical forms and requirements (*Radonich* v. *Anaconda Copper Min. Co.*, 91 Mont. 437, 8 Pac. (2d) 658), and in all cases every part of the Act is to be liberally construed (sec. 2964, Rev. Codes 1921; *Herberson* v. *Great Falls W. & C. Co.*, 83 Mont. 527, 273 Pac. 294). However, liberality of construction does not permit disregard of all rules, and the requirements of the Act itself must be complied with in order to secure action on the part of the board or a decision of a court declaring the board in error. The intention of the Act is to make the practice and procedure before the board as simple as possible (*Radonich* v. *Anaconda Copper Min. Co.*, supra), but the Act requires the claimant to comply with those simple rules of practice and procedure, particularly as to the time within which the various steps may be taken, in order that such cases may be speedily adjusted. (*Williams* v. *Anaconda Copper Min. Co.*, 96 Mont. 204, 29 Pac. (2d) 649; *Maki* v. *Anaconda Copper Min. Co.*, 87 Mont. 314, 287 Pac. 170; *Chmielewska* v. *Butte & Superior Min. Co.*, 81 Mont. 36, 261 Pac. 616.) "Liberal construction" does not permit a court to disregard the plain provisions of the Act. (*Kerns* v. *Anaconda Copper Min. Co.*, 87 Mont. 546, 289 Pac. 563.) And if a matter is concluded and the claimant fails to take the steps to secure a review or rehearing, the order

becomes *res adjudicata.* (*State ex rel. Roundup Coal Min. Co.
v. Industrial Accident Board,* 94 Mont. 386, 23 Pac. (2d) 253.)
Nor may the board do so. (*Sullivan* v. *Anselmo Min. Corp.,*
82 Mont. 543, 268 Pac. 495.) As was said by the supreme
court of West Virginia: ''While it goes without saying that
the provisions of the Workmen's Compensation Act should be
liberally construed in order that the benign purposes of the
Act may be fostered, it does not follow that either the commis-
sioner or this court, in a spirit of excessive beneficence, may
ignore plain and explicit mandates of the statute. * * *
There must be an end of these matters. * * * The legisla-
tive intent * * * must not be devitalized. If so, the com-
missioner would be subject to the continuous harassment of
dissatisfied claimants.'' (*Nichols* v. *State Compensation
Commr.,* 111 W. Va. 34, 160 S. E. 854, 855.)

The judgment of the board, as to conditions then existing,
█ in the absence of a timely motion for a rehearing, or an
appeal therefrom, is *res adjudicata* upon the issue which it deter-
mines. (*State ex rel. Roundup Coal Min. Co.* v. *Industrial
Accident Board,* supra.)

The Act makes the board the trier of facts and permits a
█ court only to review the decision of the board on the rec-
ord made before the board, except where, for good cause shown,
evidence *in addition* to that received by the board is permitted
by the court to be introduced. (*Rom* v. *Republic Coal Co.,* 94
Mont. 250, 22 Pac. (2d) 161.) The additional testimony must
be with reference to the case made before the board, and, mani-
festly, the court here could not set aside the proceedings had
before the board, and hear testimony concerning a new claim
based on alleged facts contradicting claimant's own showing
before the board, which new claim had never been presented
to the board. That this was what the claimant was seeking
to do was made manifest to the court by the introduction of
the evidence on the trial. In order to evade the effect of the
evidence adduced before the board on which the 1932 order
was based, and which referred only to an injury to the left leg
and right shoulder, the claimant testified before the court that

an immense amount of rock and dirt, which seemed like a "million tons," fell upon his back, crushing him to the earth and covering his whole body, until he was "like a pancake," and that both feet and both legs were injured, "starting from the bottom of my both feet." Yet he was in the hospital but four days, at the end of which period "I was told to go home." Confronted by the recitations in his claim filed with the board, it being the only basis for the award of compensation originally, he repudiated it and denied his signature thereto, and denied that he ever made the statement that while timbering "falling rock struck my left leg and injured it." On the hearing before the board the claimant did not attempt to deny Dr. Shields' statement that he, Shields, was the attending physician from the day of the injury, but before the court, in rebuttal of the testimony of Dr. Shields, he declared that Dr. Shields did not see him or treat him until five months after the accident; that Dr. O'Keefe was his attending physician for the first five months, and that then Jere Shea, the foreman, told him "there was no more money for you until you get a new doctor"; that he went to Dr. O'Keefe and "O'Keefe saw Dr. Shields." He did not call Dr. O'Keefe or Jere Shea to corroborate him; and in addition to Dr. Shields' positive testimony, both before the board and the court, the fact remains that it was Dr. Shields and not Dr. O'Keefe, who made the "Attending Physician's report" to the board shortly after the accident.

No good purpose would be served by reviewing the remainder of the evidence taken by the court; suffice it to say that it is extremely doubtful that the claimant could prevail thereon either before the board or the court, had its presentation been timely.

On the record as a whole, the judgment of dismissal must be sustained.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

Mr. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.

Rehearing denied June 22, 1935.