No. 34,415

Iva Merle DeVaul, as Administratrix of the Estate of Oscar B. DeVaul, Deceased, *Appellant,* v. The Southern Kansas Stage Lines Company and The Santa Fe Trail Transportation Company, *Appellees.*

(95 P. 2d 541)

Opinion filed November 10, 1939.

*Clarence R. Sowers* and *Claude E. Sowers,* both of Wichita, for the appellant.

*Bruce Hurd, C. J. Putt* and *Robert M. Clark,* all of Topeka, for the appellees.

The opinion of the court was delivered by

Dawson, C. J.: Plaintiff's husband, a motorbus mechanic, died by inhaling carbon monoxide fumes emitted from defendants' interstate motorbus while he was lying beneath the bus and repairing it in defendants' car shop in Wichita.

Instead of making a claim of compensation under the workmen's compensation act in behalf of herself and children, plaintiff brought this action for damages, alleging that defendants were engaged in interstate commerce, to wit, the transportation of passengers and freight in and through the states of Kansas, Missouri, Oklahoma and Colorado; and that they had failed and neglected to equip their repair shop with suitable safety appliances to carry off noxious gases, thereby violating the federal employers' liability act, and causing the death of plaintiff's husband, and that defendants were consequently liable to her in damages.

The trial court sustained defendants' demurrer to plaintiff's amended petition, and she appeals.

The statute under which plaintiff sought to subject defendants to liability reads, in part, thus:

"Every common carrier by railroad while engaging in commerce between any of the several states or territories, . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." (45 U. S. C. A. 92, § 51.)

Can it be said that this statute governs the liability of other interstate carriers than railroads? The United States supreme court has answered that question in the negative. In *Robinson v. Balt. & Ohio R. R.*, 237 U. S. 84, the plaintiff, an employee of the Pullman Company, sustained injuries while engaged in its service and while defendants' sleeping car was part of an interstate railroad train belonging to and operated by the Baltimore and Ohio Railroad Company. He sought, unsuccessfully, to subject the railroad company to liability under the statute quoted above. While the court's chief concern in that case was centered on the contractual relationship of plaintiff and his immediate employer, and between it and the railroad company, in the opinion we find the following significant language:

"We are of the opinion that congress used the words 'employee' and 'employed' in the statute in their natural sense, and intended to describe the conventional relation of employer and employee."

In *Wells Fargo & Co. v. Taylor*, 254 U. S. 175, the plaintiff, an employee of an interstate express company, sustained injuries when its express car was derailed while moving as part of an interstate railway train. He sought to subject his employer to liability under the provisions of the federal employers' liability act. As in the Pullman employee's case, cited above, the supreme court considered at length the contractual relationship of the express company to the railway company, and of the plaintiff's relationship to each of them. His contention that his employer, the express company, was liable to him under the federal employers' liability act was not sustained. The circuit court of appeals had held that the express company was a "common carrier by railroad" within the meaning of the employers' liability act of April 22, 1908, c. 149, 35 Stat. 65. The supreme court's opinion, in part, reads:

"The act provides that 'every common carrier by railroad' shall be liable in

damages for the injury or death of any of its employees occurring while it is engaged and he is employed in interstate commerce and resulting in whole or in part from the negligence of any of its officers, agents or employees, or from any defect or insufficiency, due to its negligence, 'in its cars, engines, appliances, machinery, track, roadbed,' etc.; . . . As respects the express company, it appears not merely that Taylor was in its employ, but also that the injuries were received while it was engaged and he was employed in interstate commerce; and so the question is presented whether the act embraces a common carrier by express which neither owns nor operates a railroad, but uses and pays for railroad transportation in the manner before shown. The district court answered the question in the negative and the circuit court of appeals in the affirmative. A negative answer also has been given in a like situation by the court of errors and appeals of New Jersey, *Higgins v. Erie R. R. Co.,* 89 N. J. L. 629; and a recent decision by the supreme court of Minnesota makes persuasively for that view. *State, ex rel. Great Northern Express Co., v. District Court,* 142 Minnesota, 410. In our opinion the words 'common carrier by railroad,' as used in the act, mean one who operates a railroad as a means of carrying for the public—that is to say, a railroad company acting as a common carrier. This view not only is in accord with the ordinary acceptation of the words, but is enforced by the mention of cars, engines, track, roadbed and other property pertaining to a going railroad (see *Southern Pacific Co. v. Jensen,* 244 U. S. 205, 212-213); by the obvious reference in the latter part of §§ 3 and 4 to statutes requiring engines and cars to be equipped with automatic couplers, standard drawbars and other appliances intended to promote the safety of railroad employees (see *San Antonio & Aransas Pass Ry. Co. v. Wagner,* 241 U. S. 476, 484); by the use of similar words in closely related acts which apply only to carriers operating railroads, c. 196, 27 Stat. 531; c. 225, 35 Stat. 476; c. 208, 36 Stat. 350, and by the fact that similar words in the original interstate commerce act had been construed as including carriers operating railroads, but not express companies doing business as here shown. 1 I. C. C. 349; *United States v. Morsman,* 42 Fed. Rep. 448; *Southern Indiana Express Co. v. United States Express Co.,* 88 Fed. Rep. 659, 662; s. c. 92 Fed. Rep. 1022. And see *American Express Co. v. United States,* 212 U. S. 522, 531, 534.

"As Taylor was not an employee of the railroad company and the express company was not within the employers' liability act, it follows that the act has no bearing on the liability of either company or on the validity of the messenger's agreement." (pp. 186, 187.)

In *United States v. Interstate Commerce Commission,* 288 Fed. 649, the question before the court of appeals of the District of Columbia was whether a refrigerator car company was a "carrier by railroad" under the transportation act of 1920. Its cars moved regularly in interstate railway freight trains. In answering that question in the negative, the court quoted from *Wells Fargo & Co. v. Taylor,* supra. This judgment was affirmed in *Chicago Refrigerator Co. v. I. C. C.,* 265 U. S. 292, where Mr. Justice Sutherland, speaking for the court, said:

"If the car company is a carrier by railroad, it would seem to follow that sleeping car companies and express companies are likewise included within the words. Evidently, however, congress did not think so, since § 209 of the act contains special provisions in respect of these companies, which would have been entirely unnecessary if they had been so included. The contention that the car company, if not a carrier by railroad, is a 'system of transportation' and hence within the words of the statutory definition, may be readily disposed of. The phrase forms part of the definition: 'a carrier by railroad or partly by railroad and partly by water, whose railroad or system of transportation is under federal control,' etc. It is plain that the words 'whose railroad or system of transportation,' etc., are not to be read independently, but as qualifying the language immediately preceding; and they are to be taken distributively as though the clause had read 'a carrier by railroad, whose railroad is under federal control, or, a carrier partly by railroad and partly by water, whose system of transportation is under federal control." (p. 297.)

It is argued, however, that the federal motor-carrier act of 1935, whereby the authority of the federal government was extended over the business of motor carriers engaged in interstate commerce, had the legal effect of subjecting that business to all the regulations theretofore imposed on railroads engaged in such commerce. On the contrary, the act of 1935 declares its purposes thus:

"(a) It is hereby declared to be the policy of congress to regulate transportation by motor carriers in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest; promote adequate, economical, and efficient service by motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices; improve the relations between, and coördinate transportation by and regulation of, motor carriers and other carriers; develop and preserve a highway transportation system properly adapted to the needs of the commerce of the United States and of the national defense; and coöperate with the several states and the duly authorized officials thereof and with any organization of motor carriers in the administration and enforcement of this chapter.

"(b) The provisions of this chapter apply to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce and to the procurement of and the provision of facilities for such transportation, and the regulation of such transportation, and of the procurement thereof, and the provision of facilities therefor, is hereby vested in the Interstate Commerce Commission.

"(c) Nothing in this chapter shall be construed to affect the powers of taxation of the several states or to authorize a motor carrier to do an intrastate business on the highways of any state, or to interfere with the exclusive exercise by each state of the power of regulation of intrastate commerce by motor carriers on the highways thereof." (49 U. S. C. A., p. 70, § 302.)

The purposes and policy of congress being thus avowed and thus limited, this court cannot approve appellant's argument that by this statute congress impliedly imposed on interstate motorbus carriers all the liabilities theretofore laid on interstate railroads, including the federal employers' liability act. If or when congress deems it proper to impose all such liabilities on interstate motorbus carriers, or on interstate airplane carriers, or on any other new modes of interstate transportation as they appear, it will amend the statute of 1908 by express legislation, and will not rely on diffusive and debatable interpretations of existing statutes to accomplish its purpose. Such in effect was the conclusion of the supreme court of Wyoming in *Baldwin, State Treasurer, v. Byrne* (Wyo. not yet officially reported), 86 P. 2d 1095. In that case a driver of a motor truck who resided in Wyoming was killed in a highway accident in Colorado while engaged in interstate commerce in his employer's service. The controlling question in the case was whether his widow was entitled to compensation under the Wyoming statute and incidentally whether the local workmen's compensation act as applied to her case had been superseded by the enactment of the federal statute of 1935. The Wyoming supreme court said:

"Finally, it is argued for appellant that the accident and death involved occurred in interstate commerce, . . . While it is clear that the national congress has legislated in regard to some phases of motor-carrier transportation, our attention is not directed by counsel to any provisions of the motor-carrier act which specifically cover or even trench upon the field occupied by the Wyoming workmen's compensation act." (p. 1102.)

In *State, ex rel. Wash. Motor Coach Co., v. Kelly,* 192 Wash. 394, 74 P. 2d 16, proceedings in mandamus were instituted to determine whether industrial insurance premiums tendered by a motor-coach company engaged in interstate commerce, and by other relators, should be accepted. The state officer, Kelly, whose duty it was to handle the premiums and to administer those lawfully collected, took the position on advice of counsel (presumably to procure a speedy and authoritative decision on the question) that the federal motor-transportation act of 1935 completely preëmpted the whole field of interstate commerce by motor transportation to the exclusion of any right in the state to legislate upon any phase of the subject. In its opinion the court set out the pertinent section of the federal employers' liability act (as we have done above), and said:

"There is nothing in this declaration nor in the act itself remotely suggesting a purpose to regulate the liability of employers engaged in this type of interstate commerce to their employees." (p. 403.)

In our own analogous case of *Stark v. Wilson, Receiver,* 114 Kan. 459, 219 Pac. 509, we held that where a conductor of a streetcar engaged in interstate commerce between Kansas City, Kan., and Kansas City, Mo., was killed in the line of duty his family's right to compensation was founded on the workmen's compensation act and not on the federal employers' liability act.

The judgment is affirmed.