[Nos. 32832, 32833, 32834. Department Two. May 27, 1954.]

MAURICE M. McCLUNG *et al., Respondents,* v. RUSSELL PRATT *et al., Appellants.*

HARRY RESCHKE *et al., Respondents,* v. RUSSELL PRATT *et al., Appellants.*

IRA S. DILLE *et al., Respondents,* v. RUSSELL PRATT *et al., Appellants.*[1]

[1]Reported in 270 P. (2d) 1063.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for appellants.

*Kennett, McCutcheon & Soderland* and *Robert W. Moody,* for respondents.

DONWORTH, J.—These three cases consolidated by stipulation of the parties are before us on a short record pursuant to Rule on Appeal 34 (3), 34A Wn. (2d) 36.

Appellants' concise statement of points relied upon is sufficient to comply with Rule 34 (3), *supra.* However, to avoid any misunderstanding as to the exact question involved in these appeals, we restate it as follows:

Are the nonresident owner and his nonresident employee-driver of a motor truck engaged in hauling household goods in this state solely in interstate commerce amenable to our workmen's compensation act?

If the answer to this question is in the negative, respondents as injured workmen not in the employ of appellant Pratt can maintain these suits under § 2, chapter 41, Laws of 1939, p. 121 [*cf.* RCW 51.24.010] for injuries received through the negligence of appellant Yager. In such event we must affirm the judgments in these actions without considering other issues raised by appellants.

The three actions, tried together before a jury, involve the same facts, which are undisputed. Respondent husbands at the time of the collision which caused their injuries were in the course of their extrahazardous employ-

ment with Boeing Airplane Company. Appellants Pratt and wife, who own and operate the Capitol City Transfer Company, reside in Salem, Oregon. Appellant Yager, who also resides in Salem, was in their employ as a truck driver. On September 4, 1952, Yager had delivered certain household goods to a warehouse in Seattle and was on the return trip when, due to his negligent operation, his truck collided on a public street with a Boeing interplant bus in which respondents were riding, causing personal injuries to each which constitute the basis of each of these actions.

Appellants cannot seriously dispute respondents' contention that at the time of the accident the truck was engaged solely in interstate commerce.

In the absence of the jury, appellants offered to prove the following by appellant Pratt:

"Q. (By Mr. Betts) Mr. Pratt, you are operating under a license issued by [the Public Service Commission of] the State of Washington, are you? A. I am. Q. And in order to obtain that license were you required to meet any requirements of the state? A. Yes, sir. Q. And have you done so? A. Yes, sir. Q. And this operation, this business of yours, will you describe a little more in detail what it is? A. Well, it's a moving business. We have rights under the Interstate Commerce Commission to operate between a certain area in Oregon, a number of counties, to any point in Washington and return from any point in Washington to those counties in Oregon. That constitutes our interstate commerce rights, and we pick up household goods from those counties in Oregon on an occasional or infrequent trip and haul them to points in Washington, and if we are able to secure business in the return direction, and we do solicit business in the return direction, for points in Oregon. Our rights are exclusively for the transportation of household goods and personal effects."

The trial court sustained an objection to this offer of proof on the ground that it was not material to the issues, since another department of the superior court had sustained a demurrer to appellants' affirmative defense which involved the same legal question.

For the same reason, an objection was also sustained to appellants' offer to prove that Boeing Airplane Company

had included respondents' time in its report to the department of labor and industries, and later had paid current quarterly premiums under the workmen's compensation act with respect to respondents.

At the close of the testimony, appellants' motion for a directed verdict in each case was denied. The jury returned a verdict in favor of each respondent. The court heard and denied appellants' motions for judgment n.o.v. and for a new trial, and entered judgment on each verdict.

Appellants' assignments of error are that the trial court erred:

"1. In sustaining the respondents' demurrer to the affirmative defenses of the amended answers.

"2. In denying the appellants' motions for directed verdicts in favor of the appellants in each case.

"3. In denying the appellants' motions for judgment notwithstanding the verdicts of the jury, or in the alternative for new trials.

"4. In entering judgments on the verdicts in each case."

In their brief, appellants correctly state that these assignments involve the same issues. They will, therefore, be considered together.

The solution of our problem depends on the correct interpretation of § 2 of chapter 41, Laws of 1939 [cf. 51.24.010], the applicable portion of which reads as follows:

"If the injury to a workman is due to the negligence or wrong of another not in the same employ, the injured workman, . . . shall elect whether to take under this act or seek a remedy against such other, such election to be in advance of any suit under this section; . . . *Provided, however, That no action may be brought against any employer or any workman under this act as a third person if at the time of the accident such employer or such workman was in the course of any extra-hazardous employment under this act.*" (Italics ours.)

Appellants contend that the italicized portion of this statute bars respondents from maintaining these three common-law actions based on their negligence. It should be noted that the italicized portion of this third-party immunity statute prohibits the bringing of such an action

against "any employer or any workman *under this act*" if, when the accident occurred, such employer or workman was in the course of extrahazardous employment *under the act*. Consequently, in order to be entitled to the immunity granted by the statute, appellants must show not only that they were engaged in extrahazardous employment, but also that they were under *our* workmen's compensation act. There is no doubt that the trucking business is classified as extrahazardous, but were appellants amenable to the act?

To support their contention that they were amenable to our workmen's compensation act, appellants rely on the decision of this court in *State ex rel. Washington Motor Coach Co. v. Kelly*, 192 Wash. 394, 74 P. (2d) 16. In that case, we held that this state has a right to provide workmen's compensation coverage to those engaged in interstate commerce so long as Congress, acting under its constitutional power to regulate commerce among the states, has not pre-empted the field.

After deciding that preliminary question in the *Washington Motor Coach* case, we stated the legal question involved as follows:

"Conceding power in the state, by reason of the non-action of Congress, to enact a workmen's compensation act covering employees in interstate commerce, the next inquiry is whether the relators' employees are within the terms of the act."

We answered this question thus:

"Our conclusion is that the employees of the relators engaged in motor transportation, whether their operations be intrastate or interstate, are covered by the provisions of the 1937 Session Laws. [Chapter 211, Laws of 1937, which classified stage driving as an extrahazardous employment covered by the workmen's compensation act.]"

The Washington Motor Coach Company and the Grays Harbor Lines, the two relators in that case, were Washington corporations with their headquarters in this state, and subject to the laws of this state in the conduct of their

business. Furthermore, each company was doing both intrastate and interstate business.

We held in the *Washington Motor Coach* case that all of the business of each of the relators, *both intrastate and interstate*, was subject to the workmen's compensation act because the employees were engaged in one integrated business which involved both kinds of commerce. We did not decide in that case that *all* employers engaged in interstate commerce in the transportation of persons or goods on the highways of this state are subject to our workmen's compensation act, *because that issue was not then before the court.*

Since that issue is squarely presented in this case, we must decide it now.

The statute governing the application of our workmen's compensation act to intrastate and interstate commerce by motor carriers is § 3, chapter 67, Laws of 1919, p. 136 [*cf.* RCW 51.12.090], which says:

"*The provisions of this act shall apply to employers and workmen* (other than railways and their workmen) *engaged in intrastate and also in interstate* or foreign *commerce*, for whom a rule of liability or method of compensation now exists under or may hereafter be established by the congress of the United States, *only to the extent that the payroll of such workmen may and shall be clearly separable and distinguishable from the payroll of workmen engaged in interstate* or foreign *commerce: Provided,* That as to workmen whose payroll is not so clearly separable and distinguishable, the employer shall in all cases be liable in damages for injuries to the same extent and under the same circumstances as is specified in the case of railroads. . . ." (Italics ours.)

Appellants assert that the foregoing statute extends the provisions of our workmen's compensation act to a nonresident owner of a transportation business who is engaged only in interstate commerce in this state. We disagree. By its plain terms, the statute makes our workmen's compensation act apply only to "employers and workmen . . . *engaged in intrastate and also in interstate* or foreign *commerce.*" (Italics ours.)

As we have seen, appellant Pratt and his employee (appellant Yager) were not engaged in intrastate commerce and also interstate commerce at the time of the accident. They were engaged in interstate commerce *only*. Thus the statute plainly does not purport to apply to them.

The broad language used in the *Washington Motor Coach* case to the effect that all of relators' employees, "whether their operations be intrastate or interstate," are covered by our workmen's compensation act did not purport to change the plain meaning of the statute so as to include nonresident truck owners engaged only in interstate commerce. In that case, the relators and their employees were engaged in *both* intrastate commerce and interstate commerce, and the language used must be confined to the facts before the court in that case.

Furthermore, the limitation contained in § 3 (concerning the separability of the two kinds of payrolls) quoted above makes it evident that the only employers whom the legislature intended to make amenable to the act were those who had workmen employed in this state on payrolls separable into two categories—intrastate commerce and interstate commerce. Employers engaged wholly in intrastate commerce are excluded because they have no payroll separable into intrastate and interstate categories, but such employers are covered by another part of the act (§ 1, chapter 247, Laws of 1947, p. 999 [*cf.* RCW 51.20.010]).

Consequently, we must hold that a nonresident motor carrier employer who is engaged in the operation of a transfer business only in interstate commerce in this state does not come within the purview of § 3, chapter 67, Laws of 1919 [*cf.* RCW 51.12.090]. Likewise, the employee of such nonresident employer is not covered by that statute while engaged exclusively in interstate commerce in this state.

In view of this conclusion, we do not find it necessary to consider the other matters discussed by the parties in their briefs.

We wish to point out that, in the cases at bar, we are not concerned with whether or not this state has *authority*

to require such nonresident employers to comply with our workmen's compensation act during the time their employees are engaged in operating trucks on the highways of our state solely in interstate commerce. All that we decide in these consolidated cases is that appellants, while engaged exclusively in interstate commerce in the state of Washington in the manner described herein, were not amenable to the provisions of our workmen's compensation act in its present form.

Therefore, the trial court did not err in holding that appellants were not amenable to our workmen's compensation act and that consequently they were not immune from suit under the provisions of § 2 of chapter 41, Laws of 1939 [*cf.* RCW 51.24.010].

The judgments must be and are hereby affirmed.

GRADY, C. J., SCHWELLENBACH, HILL, and WEAVER, JJ., concur.