ERHARDT REITHEL'S (dependent's) CASE.

Worcester.   October 4, 1915. — October 18, 1915.

˙Present: RUGG, C. J., LORING, DE COURCY, & PIERCE, JJ.

*Workmen's Compensation Act.*

One employed as the superintendent of a woolen mill, a part of whose duty it was
to order from the premises any person or persons that had entered without per-
mission and who had been instructed by the manager that, if a certain disorderly
person came again to the mill, he was to order him out and, if he did not go, was
to send for the police, was informed that the disorderly person was in the mill
and was threatening to kill one of the employees with a revolver, and the super-
intendent was asked to order him out, whereupon the superintendent walked
toward the trespasser and made a motion toward the door, directing him to go
out, and the trespasser then shot the superintendent and caused his death.
*Held*, that a finding of the Industrial Accident Board was warranted, that the
injury resulting in the death of such employee arose out of and in the course
of his employment.

RUGG, C. J.   The deceased employee, Erhardt Reithel, was em-
ployed as the superintendent of a woolen mill.   It was a part of
his duty to order from the premises of the subscriber any person or
persons who entered without permission.   During his employment
he had directed a considerable number of such people to leave the
mill.   One Bombard entered the premises of the subscriber without
permission in June, 1914, interviewed and annoyed an employee
named Mrs. King, and created a disturbance.   Reithel as superin-
tendent ordered him to leave, and he did as directed.   This occur-
rence was reported to the manager of the mill who instructed
Reithel, if Bombard again appeared on the premises to order
him out, and, if he did not go, to send for the police authorities.
The finding of the Industrial Accident Board proceeds as follows:
"Bombard appeared again on July 9, 1914, having a revolver in
his possession, and engaged Mrs. King in conversation.   He finally
threatened Mrs. King with the revolver and she sent another em-
ployee, Provost, to the superintendent with a request that Bom-
bard be ordered from the premises.   In this connection, the˛ evi-
dence shows that a daughter of the superintending employee also
informed him that Bombard had a revolver and was going to

shoot Mrs. King. 'For God's sake, go and tend to that man,' she urged. The superintendent thereupon walked toward Bombard, made a motion toward the door, directing him to go out. Bombard immediately discharged the revolver at the superintendent, fatally injuring him; and afterwards shot at the employee's daughter and Mrs. King."

This finding presents a case of wholly unprovoked murder. The question is, whether this personal injury was one "arising out of and in the course of" the employment of Reithel. Plainly it arose in the course of his employment. It came upon him while he was doing his duty in the place and manner required by his contract of hire.

The only point of difficulty is whether it also arose out of the employment. The Industrial Accident Board has found that it did. The facts are not in dispute. The question to be decided is whether as matter of law this finding was erroneous.

The employee was the superintendent of a mill. It was a part of his general duty to order trespassers from the premises. In this respect he was required to deal with those more or less heedless of the rights of others in their conduct. Superimposed upon this general obligation resting on him by reason of his contract of employment was a special one respecting Bombard. It came into existence because Bombard on some occasion within a few weeks before the event in question had been upon the premises of the employer. He had come as a trespasser, he had annoyed a woman employee, and he had created a disturbance. It thus had appeared that he was a disorderly person. His conduct on that occasion was of sufficient importance to form the subject of a report by the superintendent to his superior, the manager of the factory. In view of these circumstances, the employee was given a special direction respecting Bombard. His duty was defined in this particular. He was to be ordered out, and the police were to be summoned if he did not go. Commonly such precautions are not taken nor such directions given respecting the ordinary trespasser. They indicate that the employer and employee realized that they were dealing with a maker of trouble who was or might be generally lawless in his conduct, and who must be treated accordingly for the security of property and the safety of employees and others who might be upon the premises. The liability to whatever per-

sonal injury might be likely to arise in dealing with such a person was, therefore, within the contemplation of the employer and employee in establishing the boundaries of the latter's duty. That became a risk of the employment. It is not usual for people with whom a mill superintendent comes in contact to commit crime. Conduct of that sort is not to be presumed nor commonly expected. Danger of being assaulted is not the usual concomitant of work. But when a special duty arises to deal with one who is a trespasser, an annoyer of a woman employee and a creator of disturbance, then a corresponding special risk of personal violence arises. That duty and that risk then become correlative. It hardly can be said as matter of law, under these circumstances, that danger of assault from such a creator of disturbance as Bombard was not incidental to the doing of that which Reithel's contract of employment required of him. An element inherent in the performance of the duty of excluding trespassers from property and mischief makers from the company of employees is that some degree of violence may be encountered. Those required to deal with lawless persons may be treated with lawlessness. The precise form which that risk may take is not of consequence. Its unexpectedness and gravity is not the test. *Sponatski's Case,* 220 Mass. 526. That murder resulted instead of a broken bone is of slight if, indeed, it is of any significance. This injury was one to which the employee was exposed by reason of his employment, and, but for the special duty imposed on him respecting Bombard, he would not have been in the way of receiving it. The causative danger was peculiar to his work. It was incidental to the character of the employment and not independent of the relation of master and servant. Although unforeseen and the consequence of what on this record appears to have been a crime of the highest magnitude, yet now, after the event, it appears to have had its origin in a hazard connected with the employment and to have flowed from that source as a rational consequence. Tried by the test suggested in *McNicol's Case,* 215 Mass. 497, 499, the injury seems to have arisen in the course of the employment.

Under our workmen's compensation act it is not required that the injury be also an accident, differing in this respect from the English act and being more liberal to the employee. But even under the English act, in the present case the dependent would be

awarded compensation. *Trim Joint District School Board* v. *Kelly*, [1914] A. C. 667. *Nisbet* v. *Rayne & Burn*, [1910] 2 K. B. 689. *Anderson* v. *Balfour*, [1910] 2 Ir. R. 497. *Challis* v. *London & South Western Railway*, [1905] 2 K. B. 154. *Weekes* v. *Stead & Co.* 7 B. W. W. C. 398; 83 L. J. (K. B.) 1542. It is not necessary to discuss the English cases relied on by the insurer. Many of them are reviewed in *McNicol's Case, ubi supra.* While it is possible that some of the English cases are not reconcilable with each other, it seems to us that none are opposed to the result which we have reached.

*Decree affirmed.*

*C. C. Milton*, (*F. L. Riley* with him,) for the insurer.

*W. Thayer*, (*F. A. Walker & J. F. Humes* with him,) for the dependent widow.