CHARLES W. CRANNEY'S (dependent's) CASE.

Suffolk. December 5, 1918. — February 26, 1919.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Workmen's Compensation Act,* Injuries to which it applies.

Where the head waiter of a hotel in a city in the course of his duty rightfully discharged a waiter serving under him, who was of an excitable temperament and "was made ugly by drinking liquor" and who was an habitual drinker and habitually carried a pistol, and about three hours later the discharged waiter shot the head waiter and killed him as he was eating his luncheon, in a claim under the workmen's compensation act by the dependent widow of the head waiter, the Industrial Accident Board found that the employee "was shot and killed solely by reason of his performance of his duties as a head waiter and that as it turned out his death resulted from a risk of his employment and flowed from that source as a rational consequence," and awarded compensation to his widow. *Held,* that the finding and the award were warranted.

Under the workmen's compensation act, so long as an employee while in the performance of his employer's business properly exercises the authority conferred upon him by his contract of employment, injuries received by him in consequence of exercising that authority arise out of his employment, and, if death ensues, his dependents are entitled to compensation.

APPEAL to the Superior Court under the workmen's compensation act from a decision of the Industrial Accident Board awarding compensation to Mary E. Cranney, as the dependent widow

of Charles W. Cranney, who was employed by the Hotel Essex in Boston as head waiter and was shot and killed on August 28, 1916, by a waiter whom he had discharged.

The case was heard by *J. F. Brown*, J. The evidence reported by the Industrial Accident Board is stated in the opinion. The judge made a decree in accordance with the decision of the Industrial Accident Board, awarding to the dependent widow compensation at the rate of $10 a week for a period of four hundred weeks from August 28, 1916. The insurer appealed.

*G. Gleason*, for the insurer.

*J. H. Cline*, for the dependent widow.

BRALEY, J. The case was heard in the first instance by a single member of the Industrial Accident Board, whose decision for the claimant was affirmed on review by the full board. While the insurer concedes that there was some evidence to support most of the findings of fact, we are satisfied upon reading the evidence which includes the statement of Zacharachi who shot and killed the employee, that all of the findings were warranted. The findings were as follows: "that the employee . . . was shot and killed on August 28, 1916, by one Stellianos Zacharachi; that the deceased was head waiter at the Hotel Essex and had been such for two and a half years prior to the shooting; that the deceased employee had been employed as a waiter and as head waiter at the hotel for about sixteen years; that his duties as head waiter embraced the hiring and discharging of waiters, their control while on duty and the maintenance of discipline among them; that Zacharachi, the assailant, had been employed as a waiter at the hotel for about twenty years; that prior to the claimant's decedent becoming head waiter Zacharachi had enjoyed special privileges not enjoyed by the other waiters, including a special station and shorter hours; that the deceased in the interest of discipline and to allay dissatisfaction among the other waiters and promote the interests of his employers took these privileges away from Zacharachi; that a few weeks before the shooting Zacharachi had been discharged because he was not a member of the waiters' union and that immediately prior to the shooting the deceased had voluntarily re-employed Zacharachi but had not given him his old station; that Zacharachi was of an excitable temperament, was made ugly by drinking liquor; that

Zacharachi was a habitual drinker for a long period of years and that he habitually carried a pistol; that his drinking habits and the effect of liquor on him and the fact that he carried a pistol were generally known at the hotel; that about a month before the shooting a pistol belonging to Zacharachi was taken away from him at the hotel and placed in the custody of the book-keeper; that on the morning of August 28, 1916, Zacharachi came in to work and did some work; that about 11 A. M. he had some words with the deceased in regard to his work; that he refused to obey the orders of the deceased and was told that he was discharged; that he was very angry and became further inflamed by a couple of drinks which he secured at the hotel bar; that while angry and inflamed by liquor he sought out the deceased employee, had some further words with the deceased in regard to his employment and then shot and killed him; that the shooting occurred while the deceased employee was eating his luncheon shortly after two o'clock; that his luncheon was furnished to him as a part of his contract of employment; that the deceased was free to leave the hotel from two o'clock until five thirty in the afternoon but that he was subject to call while in the hotel and customarily returned to his place of employment in the dining room after eating his luncheon."

It is unnecessary to discuss the questions whether the employer knew of Zacharachi's habits in the use of intoxicating liquors or of carrying a pistol, or that drinking caused him to be ugly, as the decision is put on the ground, that the employee "was shot and killed solely by reason of his performance of his duties as a head waiter and that as it turned out his death resulted from a risk of his employment and flowed from that source as a rational consequence." The insurer, relying on *McNicol's Case*, 215 Mass. 497, contends that compensation cannot be awarded, as the casualty could not have been reasonably foreseen by the employer, and therefore not being a risk of the employment it does not arise out of it. The shooting occurred in the employer's dining room while Cranney was at luncheon. It is manifest that he lost his life, not because of any quarrel of his own with the assailant, but because he faithfully and properly discharged the duty owed to his employer, and thereby incurred the resentment of Zacharachi. "The servant must serve in the master's way as he is di-

rected, or in emergencies as he has reason to believe the master would approve were he present, or as he a faithful servant owing to his master fealty and aid in time of peril ought." It was plainly in the employer's interest and for its benefit that Zacharachi should be discharged, and when Cranney was hired and entrusted with this general authority, which he exercised in a reasonable and suitable way, it was contemplated that whatever befell him when acting strictly within the scope of his employment, even if the time and conditions could not be forecast, was incidental to and part of the employment. "The rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery." *Madden's Case,* 222 Mass. 487, 495. It moreover is reasonably within the common experience of mankind that the general nature of what Cranney would have to do in maintaining discipline if a waiter persisted in disobeying orders, and the possible anger and desire "to get even" of a waiter discharged under such circumstances could be foreseen in the sense that such incidents are not mere figments of the imagination, but incidents which might occur in the ordinary course of human affairs. "That murder resulted instead of a broken bone is of slight if, indeed, it is of any significance. This injury was one to which the employee was exposed by reason of his employment. . . . The causative danger was peculiar to his work. It was incidental to the character of the employment and not independent of the relation of master and servant. Although unforeseen and the consequence of what on this record appears to have been a crime of the highest magnitude, yet now, after the event, it appears to have had its origin in a hazard connected with the employment and to have flowed from that source as a rational consequence. Tried by the test suggested in *McNicol's Case,* 215 Mass. 497, 499, the injury seems to have arisen in the course of the employment." *Reithel's Case,* 222 Mass. 163, 165.

We are of opinion that, so long as the employee while in the performance of the employer's business properly exercises the authority conferred upon him by his contract of employment, injuries received by him resulting from such employment arise out of the employment, and, if death ensues, as in the case at bar, his dependents are entitled to compensation. *McNicol's*

*Case,* 215 Mass. 497.    *Reithel's Case,* 222 Mass. 163.    *Von Ette's Case,* 223 Mass. 56.    *Harbroe's Case,* 223 Mass. 139.    The decree should be affirmed.

*So ordered.*