DAVIS, GUARDIAN, APPELLANT, *v.* INDUSTRIAL ACCIDENT
BOARD, RESPONDENT.

(No. 6,978.)

(Submitted October 17, 1932.   Decided November 4, 1932.)

[15 Pac. (2d) 919.]

*Mr. C. E. Pew,* for Appellant, submitted a brief and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. C. N. Davidson,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Davidson* argued the cause orally.

HONORABLE FRANK P. LEIPER, District Judge, sitting in place of MR. JUSTICE GALEN, disqualified, delivered the opinion of the court.

The matter in controversy arose between Bessie M. Davis, as guardian of the persons and estates of Leon and Sybel Forsythe, minors, on the one hand, and the Industrial Accident Board of the state of Montana, on the other. The controversy was submitted to the trial court upon an agreed statement of facts. That court made its findings and rendered judgment favorable to such board. This appeal is from that judgment.

From the agreed statement of facts it appears: That one Thomas Forsythe was, in December, 1926, in the employ of a mining corporation in Butte, Montana; that this corporation had qualified under plan 3 of the Workmen's Compensation Act (Rev. Codes 1921, sec. 2990 et seq., as amended), and at all times herein mentioned injuries to its employees were compensable thereunder; that in December of that year Thomas Forsythe was injured while in the employ of this corporation and, as a result of such injury, died in the following January; that he left surviving him his wife, Beryle Forsythe, and two minor children, one of which was born in 1921 and the other in 1923; that after his death his widow established before the board her status and that of the two minor children as beneficiaries of the deceased; that the widow never was appointed guardian of her children and that no other person was appointed such guardian until June, 1930; that such board duly determined that there should be paid to the widow and minor children the sum of $15 per week for the period of 400 weeks; that the sum of $15 per week was paid to them until April 1ᵗ, 1928; that on March 14, 1928, a partial lump sum settlement was made, and under it the sum of $1,290 was paid to the widow; that on April 9, 1928, the

widow wrote a letter to the board in which she asked that a full lump sum settlement be made; in this letter she represented to the board that she could purchase a forty-acre farm near Columbus, Montana, for $2,800, $1,000 of the purchase price to be paid in cash and the remainder of the purchase price in payments of $450 per year; that she could then send her two children to the public school at Columbus; that the farm would make a good home for them; that in this letter she referred the board to a Columbus bank for information concerning this farm; the board wrote to an officer of that bank and received a reply in which the forty-acre tract is described as to location, improvements, value and propinquity to school; that no other application was made to the board excepting this letter; upon the information contained in these two letters the board granted the request of the widow and paid over to her the whole of the remainder of the compensation, to-wit, the sum of $3,335.82, as full settlement of the balance due the beneficiaries of Thomas Forsythe by reason of his death; that this payment was made April 13, 1928; that on March 19, 1928, Beryle Forsythe married one Leslie Chenette and continued to be his wife until the time of her death, which occurred November 4, 1928; that during her lifetime the children resided with and were supported by her; that she did not advise the board of her remarriage and signed the letter asking for a full lump sum settlement, "Beryle Forsythe"; that after her death the two minors were left in the care of her parents and that her mother, Bessie M. Davis, was, on June 11, 1930, appointed as the guardian of the minors and ever since has been and now is the duly appointed, qualified and acting guardian; that neither Thomas nor Beryle Forsythe left any estate, except the compensation above mentioned; that the minors have no property except that growing out of this compensation; and that the money paid to Beryle Forsythe in the full lump sum settlement appears to have been dissipated.

No contention is made concerning the validity of the partial lump sum settlement made in March, 1928, which resulted

in the payment of $1,290 and, therefore, no consideration will be given thereto herein.

The guardian's contention amounts to this: That the board was without authority to make the final lump sum settlement; that its act in that regard is a nullity; that these minors are not bound by that act; and that therefore, in contemplation of law, that part of the compensation involved in the final lump sum settlement remains in the hands of the board for payment to the minors.

The board determined, in the first instance, that the beneficiaries were the widow and the two minors. It further found that compensation should be paid to them at the rate of $15 per week for the period of 400 weeks. Two methods of payment are authorized by the statute, as follows: First, "all payments of compensation, as provided in this Act, shall be made monthly, except as otherwise provided herein." (Sec. 2925, Rev. Codes 1921.) Second, "the monthly payments provided for in this Act may be converted, in whole or in part, into a lump sum payment * * * such conversion can *only* be made upon the written application of the injured workman, his beneficiary, or major or minor dependents, * * * and shall rest in the discretion of the board, both as to the amount of such lump sum payment and the advisability of such conversion." (Sec. 2926, Id.)

One of the purposes of this Act is the protection of the dependents of the employee. Undoubtedly the legislature intended that the monthly payment plan should be the rule and the lump sum payment the exception; the monthly payment is the substitute for the pay check. By affording protection for the dependents, society is thereby protected, in that the dependents are less likely to become public charges. Experience has proven that a very large percentage of insurance paid in a lump sum to widows and orphans reaches the hands of swindlers.

"The principle involved in the Compensation Acts is that the benefits received are a substitute for the wages of the injured employee, and with this theory in mind the legislatures

of all states, except three, have provided for periodical payments. The purpose of this method is to preclude any possibility of an imprudent employee or dependent wasting the means for support and thereby becoming a burden upon society.

"Fraternal insurance statistics show that more than fifty per cent of the insurance money paid to widows and orphans reaches the hands of swindlers. Our legislatures were, however, mindful of the fact that cases might arise wherein the interests (of all) might be better served by an award of a lump sum." (Schneider on Workmen's Compensation Law, 1296; *Cogdill* v. *Aetna Life Ins. Co.*, 90 Mont. 244, 2 Pac. (2d) 292, 296.)

It may be assumed that the legislature had these and other facts of a similar nature in mind in providing the method for payment of compensation under our Compensation Act.

The means whereby compensation reaches the dependent under the monthly payment plan is very simple. In fact, nothing whatever is required to be done except to receipt for the payment and that receipt, in certain instances, may be executed by the parent. (Sec. 2898, Rev. Codes 1921, as amended by Laws 1925, Chap. 121, sec. 8.) It is apparent too that the legislature considered that while the parent may be entrusted with the handling of one month's payment, it does not necessarily follow that the same parent will judiciously invest or carefully husband and expend the moneys derived from a full lump sum settlement. For where the monthly payment plan is used, only one month's payment is involved; whereas, in the other plan the whole of the compensation is involved. In the monthly payment plan the board retains control of all of the compensation except the one payment; in the other plan, upon final payment the board parts with the control of the entire fund. In the one case the one month's payment may be squandered and yet the dependents not become public charges; in the lump sum settlement plan, if the whole compensation be squandered an entirely different situation results, and the very purposes of the Act defeated.

So long as the board retains control of the fund it may see to it that the moneys paid therefrom are expended in such manner as that the purposes of the Act are accomplished. That is its duty. "It is the duty of the board and of the courts so to administer the Compensation Act as to insure the support of children entitled thereto under the Act." (*Cogdill* v. *Aetna Life Ins. Co.*, supra.)

Because of the difference in the two situations the means ▮ of procuring the lump sum settlement is much more involved. Before the board is authorized to make a lump sum settlement, an application in writing must be filed. The board is then afforded an opportunity to re-investigate the matter and ascertain the facts in each case and, having learned the facts, determine whether the application is signed by a beneficiary, who are the beneficiaries and whether the welfare of those entitled to receive compensation will be better served by the one plan of payment or by the other.

If the purposes of the Compensation Act are to be accomplished, it is indispensable that, upon application for conversion being made, the names of those entitled to receive compensation be then ascertained, as well as all the other facts pertinent to each case. The agreed statement of facts herein discloses that the investigation made in this case was indeed very meager.

No particular form of application is prescribed. Whether ▮ the letter of Beryle Forsythe, dated April 9, 1928, is sufficient in form it is not now necessary to decide. Certainly, an application containing a comprehensive statement of the facts upon which it is based, and naming those entitled to receive compensation, would be much more satisfactory. The application must be signed by the *beneficiary*. The only application in this case is the letter of April 9, 1928, which was not signed by any one of the beneficiaries. Beryle Forsythe was a beneficiary until March 19, 1928, when she married Chenette. Upon her remarriage she ceased to be a beneficiary. Section 2892, Revised Codes 1921, provides: "If any beneficiaries * * * of a deceased employee die, or if the widow

* * * remarry, the right of such beneficiary * * * or such widow * * * to compensation under this Act shall cease.''

At the time of the application the two minors were the sole ██ beneficiaries. The parent, as such, has no control over the property of the child. (Sec. 5839, Rev. Codes 1921.) Section 5839 is modified by section 2898 as amended only to the extent that the parent may receipt for the monthly payments and such receipt protects the board. The provisions of section 2898 are permissive merely. The board is not obligated thereby to make the monthly payments to the parent but may do so, and a receipt by the parent for such payment discharges (among others) the board from further liability in that regard.

The board is not authorized to act until an application in writing is made by the beneficiary. A minor is not authorized by the Compensation Act, or by any other provision of the law, to make such application in his own behalf. Such authority as to a minor is contained in the Compensation Acts of a number of the states.

At the time of the passage of the Compensation Act, there were in force, and there now are in force, general statutes relating to the appointment, qualifications, powers and duties of guardians. (Secs. 5868–5889, inclusive, Rev. Codes 1921.) It was the intention of our legislature, in a fact situation such as exists here, that these general statutes should apply. Under the facts in this case the only person authorized to sign the application is the duly appointed, qualified and acting guardian of the minors.

The supreme court of Pennsylvania, in construing the Compensation Act of that state in the case of *Lovasz* v. *Carnegie Steel Co.*, 266 Pa. 84, 109 Atl. 601, 602, says: ''Wherever the Act is silent with respect to the adjustment of any particular claim or interest in a fund allowed by it, or the orderly administration of this fund to preserve such interest, the law, as it previously existed, will step in and fill the gap which might otherwise occur; and with respect to the question now

before us, the children having an interest in the sums awarded, and the Act being silent with respect to the proper care of their interest in this fund in certain contingencies, the courts will enforce the remedy that would ordinarily apply, had such fund been under administration as the estate of a minor. As the Act is silent as to what should be done under these circumstances, and not having declared the mother, as the natural guardian, should act for the children, * * * the only course that could be followed would be that outlined by the law when the estate of minor children is under consideration.'' The same may be said of our Compensation Act. In this case the two minors have the entire interest in the compensation fund.

While the Act contains directions as to its construction by the courts (section 2964), that does not mean that either the board or the courts may disregard the clear provisions of the Act. (*Kerns* v. *Anaconda Copper Min. Co.*, 87 Mont. 546, 289 Pac. 563; *Page* v. *New York Realty Co.*, 59 Mont. 305, 196 Pac. 871.) The Compensation Act must be construed as a whole to the end that each of its provisions may be given effect and its purposes accomplished.

The Industrial Accident Board has only such powers as have been conferred upon it by express grant, or which accrue therefrom by implication as necessary and incidental to the full exercise of the granted powers. (Schneider on Workmen's Compensation Law, p. 2008, the cases there cited.)

The order of the board allowing the full lump sum settlement was and is null and void because no application therefor was filed as provided by law or at all.

Monthly payments continued until April 13, 1928. It is conceded that the minors lived with and were cared for by their mother until the time of her death, which occurred November 4, 1928. The mother left no property; the children have none; and it is conceded that the money paid over has been dissipated. In determining the amount of compensation remaining unpaid, credit must be given for payments of $15 per week up to and including November 4, 1928, and to this

should be added the sum of $1,290 (that being the amount paid under the partial lump sum settlement of March 14, 1928), and the difference between this amount and the total compensation allowed represents the remainder of the compensation remaining unpaid.

The judgment of the district court of Lewis and Clark county is reversed and the cause remanded, with direction to enter judgment in accordance herewith.

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES ANGST-MAN and MATTHEWS, and HONORABLE R. M. HATTERSLEY, District Judge, sitting in place of MR. JUSTICE FORD, disqualified, concur.