GEARY, Respondent, *v.* ANACONDA COPPER MINING CO., Appellant.

No. 8756

Submitted October 3, 1947. Decided December 23, 1947.

188 Pac. (2d) 185

Mr. R. H. Glover, Mr. John V. Dwyer, Mr. James T. Finlen, Jr., Mr. Sam Stephenson, Jr., and Mr. Robert G. Dwyer, all of Butte, for appellant.

Mr. Horace J. Dwyer, of Anaconda, for respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the Court.

Plaintiff was awarded compensation against defendant by the industrial accident board. Defendant appealed to the district court where the action of the board was upheld. This appeal followed.

The only question presented by the appeal is whether plaintiff's injury arose out of and in the course of his employment with defendant.

Plaintiff was injured on the 24th day of August 1944. He was then employed by defendant as a truck driver at the Washoe Smelter at Anaconda. During the lunch period he and other employees of defendant engaged in playing handball in a garage building owned by defendant and situated on its premises. Defendant's foreman was present on the day in question and on other occasions participated in the game. One of the fellow workers "made a spring at the ball" and accidentally struck and broke plaintiff's glasses, causing a piece of glass to enter plaintiff's right eye, resulting in the loss of the eye. Only employees of defendant were permitted to play handball in the garage. The game had been played daily for about three months. While the employees were engaged in playing they were subject to call in cases of emergency during the lunch period. It was necessary for the garage employees to eat their lunch on the premises of defendant because "if a call comes there they have to be there." They could not go home to eat because of the distance from the smelter to their homes and because "he has no right to go out of the Smelter during the noon hour."

The case of Conklin v. Kansas City Public Service Co., 226 Mo. App. 309, 41 S. W. (2d) 608, 613, was relied upon by the board as sustaining its conclusion. The facts in that case were very similar to those here. The accident happened during the lunch period and while workmen were engaged in playing

indoor baseball. The plaintiff was struck by a bat and injured while watching the game. The court in upholding an award to plaintiff pointed out that the controlling point is whether ''the injury arose from something which had become an incident to the employment.'' In summarizing, the court in that case said: ''We must hold, however, that the greater weight of authority is to the effect that where an injury arises out of a settled practice or condition known to the employer, with which there is a causal relation between the injury and the employment, the injury is compensable.''

The court applied the same rule applicable to ''prank'' or ''horse play'' cases wherein it is generally held that injuries therefrom are compensable where the employer knew of such acts and permitted them to continue. The case of Petersen, 138 Me. 289, 25 A. (2d) 240, is typical of such cases, and see Horovitz on Workmen's Compensation, 110 et seq.

In the Conklin case the practice of playing games had been followed for four or five years whereas here it had only been ''going on every day for three months,'' but we hold that this difference in time is of no consequence. The important fact is that the custom was known to the employer through its foreman who often participated in the game, and so far as the record shows no objection was made to the playing.

Another case analogous to this is Thomas v. Proctor & Gamble ·Mfg. Co., 104 Kan. 432, 179 Pac. 372, 375, 6 A. L. R. 1145, cited and relied on in the Conklin case, supra, and which reached the same conclusion. In that case claimant, a girl about 17 years of age, was accustomed to take her lunch with her and eat it on the premises of her employer between noon and 12:30 with other girls in her department. She was paid by the hour but not including the lunch period. The eating was usually done in 15 minutes. For the other 15 minutes the girls amused themselves by riding on a small truck used in their department. This was done with the knowledge and consent of the foreman. No representative of the employer objected to this

practice. While thus engaged in riding the truck, claimant sustained an injury. The court pointed out that injuries received in play are not usually compensable but then went on to say: ''If the present case is to be taken out of the general rule, it must be upon the ground that the habit of the girl employees to play with the trucks during the noon intermission, with the knowledge and express consent of the foreman, and without objection by anyone representing the defendant, made such practice one of the conditions under which the business was carried on, upon much the same principle as employers are held liable for the results of horseplay which had grown into a custom.'' The court further said: ''The purpose of the plaintiff and her associates in remaining in the factory after their lunch had been eaten was presumably to be on hand when work commenced, in order that there might be no delay—a matter in which the employer had an obvious interest.'' There are other cases where injuries arose from playing which take the opposite view. In Ryan v. State Industrial Commission, 128 Okl. 25, 261 Pac. 181, the court held that injuries sustained by an employee while playing ''catch'' with a baseball on a vacant lot belonging to the employer were not compensable. In that case it does not appear that claimant was subject to call while playing catch nor does it appear that such playing had been indulged in previously. The case of Luteran v. Ford Motor Co., 313 Mich. 487, 21 N. W. (2d) 825, supports defendant's contention that the injuries under very similar facts are not compensable.

As the court in the Conklin case pointed out, there are many authorities which by fair analogy support defendant's contention that plaintiff's injury is not compensable. But many analogous cases support the conclusion of the board and the court.

By section 2964, Rev. Codes 1935, it is made the duty of the courts to construe our Workmen's Compensation Act liberally. While we cannot under the guise of liberal interpreta-

tion, disregard plain provisions of the statute (Shugg v. Anaconda Copper Mining Co., 100 Mont. 159, 46 Pac. (2d) 435; Davis v. Industrial Accident Board, 92 Mont. 503, 15 Pac. (2d) 919), yet when it is open to more than one interpretation, one favorable to the employee and the other against him, we must give it the construction most favorable to the injured workman in order to carry out the humane purposes of the Act. Dosen v. East Butte Copper Min. Co., 78 Mont. 579, 254 Pac. 880; Grief v. Industrial Accident Fund, 108 Mont. 519, 93 Pac. (2d) 961.

The board and the lower court were warranted in construing the statute as they did and in awarding compensation to plaintiff. No useful purpose would be subserved in an attempt to reconcile the conflicting authorities dealing with analogous facts. The general rule is that if the act resulting in injury be incidental to the employment, the fact that it was done during the lunch period does not prevent the award of compensation. 71 C. J. 739. And ''injuries sustained after the completion of the regular work by an employee subject to call may in a proper case be compensable as injuries arising out of and in the course of employment.'' 71 C. J. 741.

In Employers' Liability Assur. Corp. v. Industrial Accident Commission, 37 Cal. App. (2d) 567, 99 Pac. (2d) 1089, 1092, claimant was employed as a cook in a private residence. She received her board and room at the residence and was injured on a day which was normally her ''day off,'' but due to the absence of the maid, she was in fact subject to call. While awaiting a call from her employer she proceeded to shorten her dress. In doing so she stood on a stool in order to more clearly observe the hem of the dress. While thus engaged she slipped and fell, causing the injuries for which compensation was sought. The court in affirming an award of compensation said:

''If the particular act is reasonably contemplated by the employment, injuries received while performing it arise out

of the employment, and are compensable. In determining whether a particular act is reasonably contemplated by the employment, the nature of the act, the nature of the employment, the custom and usage of a particular employment, the terms of the contract of employment, and perhaps other factors should be considered. Any reasonable doubt as to whether the act is contemplated by the employment, in view of this state's policy of liberal construction in favor of the employee, should be resolved in favor of the employee.

"Applying this test to the instant case, we believe the act was reasonably contemplated by the employment. A household servant is in a different category from most other employees. Normally she does not work, and this particular employee did not work, during definite hours. She is always on call. The employment requires her to live on the premises. She must be neat in dress and general appearance. It is necessarily contemplated by the employment that she must perform personal acts such as she was here performing while she is in her room on call."

Where, as here, the employee was subject to call during the lunch period—to all intents and purposes was forced to eat his meal on defendant's premises—and participated in the handball game on defendant's premises with defendant's knowledge and consent and with defendant's foreman sometimes engaging in the game, and where the game had been customarily played by employees and employees only, during the lunch period, there was sufficient casual connection between the game and the employment to warrant holding that the injuries resulting were sufficiently incidental to the employment that they may be said to have arisen out of and in the course of the employment.

The judgment is affirmed.

Mr. Justice Metcalf, concurs.

Mr. Chief Justice Adair (specially concurring).

Kenneth Geary was one of 24 to 30 drivers employed on the day shift by the Anaconda Copper Mining Company in the

garage department of its reduction works located at some distance from Anaconda, Montana. The hours of employment of the drivers were from 7:30 o'clock a. m. to 4 o'clock p. m. with a half hour for lunch. The general lunch time for all the workmen at the company's plant was from 12 o'clock noon to 12:30 o'clock p. m.

The operation of all the company's trucks and ambulances was directed by Joe Sladick, foreman of the garage department, who was stationed at the garage. It was his duty to take all the calls for truck delivery; to dispatch the various drivers to the different departments all over the plant as well as to send them to the various properties of the company outside and beyond the plant; to take ambulance calls and emergency calls of all kinds and to order the drivers where their services were needed. Should an employee become injured at the plant the orders were to first notify the emergency hospital, the head nurse then calls the garage foreman who assigns a driver to operate the ambulance which he sends to pick up the injured workman.

The drivers were *required* to report at the garage at the beginning of their shift in the morning. There they obtained their trucks and from there they proceeded to their respective assignments. Upon completion of their assigned tasks the drivers were *required* to return their trucks to the garage. When working about the plant the drivers were *required* to return to and remain at the garage for the lunch period. At all times from 7:30 o'clock a. m. to 4 o'clock p. m., including the lunch period, the drivers in the course of their employment were *required* to hold themselves in readiness to respond to calls, emergency or otherwise.

The foreman testified:

"Q. As foreman of the Anaconda Copper Mining Company garage * * * what are your duties? A. I take all the smelter calls for the truck delivery and send the men to the different departments all over the hill, over their outside

properties and ambulance calls and emergency calls, of all kinds.

"Q. Do all of the trucks that are operated by the Anaconda Copper Mining Company at the Anaconda plant operate under your control? A. Yes sir.

"Q. What is the rule generally about where the men, by the men I mean the truck drivers under your supervision, eat their lunch? A. Right in the garage.

"Q. It is necessary that they eat there? A. Yes, they get all their calls from that department. The trucks all come to that place and if a call comes there they have to be there.

"Q. If it were necessary for the plant to use the ambulance, how would the department get the use of same? A. If a man gets hurt at the smelter he puts the call in at the emergency hospital and they call the garage, the head nurse at the smelter."

The foreman further testified that while he had a special driver for the ambulance, yet any driver might be assigned to such duty in the absence of the regular driver. On a number of occasions Kenneth Geary was the driver so selected by the foreman to perform such duty.

On August 24, 1944, Kenneth Geary was assigned to drive the lumber yard truck. This task he finished about twenty-five minutes before 12 o'clock noon, whereupon he returned to the garage as was his duty. There he ate his lunch and then joined three other drivers in a game of handball being played in the company's garage where he received the injury which resulted in the loss of the eye.

At the time Geary received his injury he was at the garage, —headquarters for all the drivers,—*the place* on his employer's premises where he was then required to be. At the time he was struck in the eye he was subject to instant call and to immediate assignment to duty. He was where his foreman could reach him at any time. He was where he could promptly respond to any assignment that might have been given him. He was on duty subject to call and doing everything that

his employment then required him to do. While it was his lunch hour, yet his employment did not require him to spend every minute of this time in eating. As a matter of fact his employment did not require him to eat at all. He could eat or he could refrain from eating as the spirit moved him. Nor did his employment require that he do or refrain from doing any of the numerous things which a workman may reasonably do within the time allowed him for lunch. It would appear that so long as the drivers remained at the garage subject to call, what they there did to occupy their time was pretty much up to the choice of each driver individually so long as he complied with the regulations prescribed by his employer. He was not permitted to play cards or to gamble as such were forbidden by the employer. There is nothing in the record, however, to show that the employer had any other regulations respecting what the drivers should do or refrain from doing during the lunch hour. Thus, since the employer registered no objections thereto, it would appear, by implication at least, that during the lunch hour and until the 12:30 o'clock p. m. whistle the drivers were permitted to eat or to drink or to smoke or to rest or to nap or to relax by engaging in chess, checkers, dominoes, pitching horseshoes, or playing ''catch'' or handball.

Thus, since at the time he was injured the driver was doing what a man so employed may reasonably do at the time and place where he then was and where he was then required to be, his injury must be said to have been received in the course of his employment. Landeen v. Toole County Refining Co., infra. The Industrial Accident Board so found and such finding is reasonably supported by the evidence in the record before us.

In Le Bar v. Ewald Bros. Dairy, 217 Minn. 16, 13 N. W. (2d) 729, an employee of a dairy partnership was injured while voluntarily playing a game of softball after his regular hours of work. The employers never required their employees to play on the team or to attend practice games. The playing

was wholly voluntary on the part of each player. The employers had not ordered the player to be where the game was played and the player knew he lost no wages, nor did he endanger his position as an employee by not participating in the game. The employers merely encouraged their employees to play by furnishing them equipment and by giving the team a banquet at some cafe at the end of the season. It was held that the injury received by the player arose out of and in the course of his employment and that it was compensable.

In Salt Lake City v. Industrial Commission, 104 Utah 436, 140 Pac. (2d) 644, an injury sustained by a city fireman in playing handball while on duty was held to have been received in the course of his employment and compensable.

In Dowen v. Saratoga Springs Commission, 267 App. Div. 928, 46 N. Y. S. (2d) 822, a locker boy, permitted to use a swimming pool maintained by the employer on the premises, was held entitled to compensation for an injury received when using the pool during recreation hours.

In Fagan v. Albany Evening Union Co., 261 App. Div. 861, 24 N. Y. S. (2d) 779, the death of a newspaper boy while attending a picnic was held compensable.

In Holst v. New York Stock Exchange, 252 App. Div. 233, 299 N. Y. S. 255, a page boy employed by the New York Stock Exchange recovered compensation for an injury received while playing on a soccer team maintained by the Exchange.

In Piusinski v. Transit Valley Country Club, 259 App. Div. 765, 18 N. Y. S. (2d) 316, affirmed in 283 N. Y. 674, 28 N. E. (2d) 401, a golf caddy sustained an injury while engaged in a practice game with other caddies. His injury was held compensable even though he was not required to play.

In Kenney v. Lord & Taylor, 254 N. Y. 532, 173 N. E. 853, an employee dancing after a dinner given by her employer to the employees of a store was held entitled to compensation.

In Dearing v. Union Free School District No. 1, 272 App. Div. 167, 70 N. Y. S. (2d) 418, a teacher who fell and broke

her leg while attending a meeting of the teachers' association in the auditorium in one of the school buildings was held entitled to compensation.

In Scott v. Whitehouse & Co., 255 App. Div. 733, 6 N. Y. S. (2d) 916, a salesman who was injured between 4 and 5 o'clock in the morning while returning from his employer's party was held entitled to compensation.

An injury befalls a workman in the course of his employment "if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed, and at a place he may reasonably be during that time." Landeen v. Toole County Refining Co., 85 Mont. 41, 54, 277 Pac. 615, 620.

It must constantly be kept in mind that the provisions of the Workmen's Compensation Law are to be liberally construed to the end that the beneficent features thereof shall not be lost to injured workmen and where the provisions are susceptible of an interpretation either beneficial or detrimental to an injured employee, they must be construed favorably to the employee. Thus most courts have been liberal in protecting workmen during the noon hour. A worker eating lunch on the employer's premises is almost universally considered as "in the course of" the employment. DeStefano v. Alpha Lunch Co., 1941, 308 Mass. 38, 30 N. E. (2d) 827; Blanche Charon's Case, 1947, 321 Mass. 694, 75 N. E. (2d) 511.

In Holmes' Case, 267 Mass. 307, 166 N. E. 827, injuries received by a workman during the noon hour while taking a short nap awaiting the resumption of his machine work were held compensable. In Cranney's Case, 232 Mass. 149, 122 N. E. 266, 15 A. L. R. 584, compensation was allowed where a manager, while eating, was shot by a disgruntled recently fired employee.

Compensation has been allowed for injuries received: (1) while warming tea on a boiler for lunch, Etherton v. Johnstown Knitting Mills Co., 184 App. Div. 820, 172 N. Y. S. 724; (2) while taking a shower, Sexton v. Public Service Commis-

sion, 180 App. Div. 111, 167 N. Y. S. 493; (3) while on an errand for the employer during the lunch period, Schwimmer v. Kammerman & Kaminsky, 262 N. Y. 104, 186 N. E. 409, and (4) where a worker lost an arm when he went out of his way to ask a fellow employee for a chew of tobacco, Wickham v. Glenside Woolen Mills, 252 N. Y. 11, 168 N. E. 446.

In Lovallo v. American Brass Co., 112 Conn. 635, 153 A. 783, 784, a workman's oily apron became ignited as he was lighting his pipe on the employer's premises during the meal hour and from the burns so received he died. This was held "incidental to the deceased's employment" so long as smoking was not forbidden. See Mack v. Branch No. 12, Post Exchange, 1945, 207 S. C. 258, 35 S. E. (2d) 838.

In the case before us the employing company knew by the only means an artificial person can gain knowledge that for three months previous its drivers had been playing handball during the noon hour in the company's garage. Had the company not approved the practice it could have prohibited it as was done respecting gambling and the playing of cards. But handball was not forbidden. Under such circumstances, that which Kenneth Geary was doing in his employer's garage when he lost his eye was incidental to his employment and the injury so received is compensable. See Landeen v. Toole County Refining Co., supra; Souza's Case, 316 Mass. 332, 55 N. E. (2d) 611; Sullivan's Case, 265 Mass. 463, 164 N. E. 392; Employers' Liability Assur. Corp. v. Industrial Accident Commission, 37 Cal. App. (2d) 567, 99 Pac. (2d) 1089, and cases cited above.

Mr. Justice Gibson:

I dissent. The respondent was employed as a truck driver. His injury was received while he and three other employees were playing a game of handball during the lunch period in the employer's garage where the truck drivers and garage employees ate their lunch. There were no handball courts in the garage. The respondent testified at the hearing before the

board and said that the ball game was no part of his employment and that he voluntarily engaged in the game.

There is naught in the record to show that the employer encouraged the game, sponsored it in any manner, or contributed in any way to it. From the record the game appears to have been merely the impromptu playing thereof by any four employees who might care to get in the game at such time as might be available from their brief half hour lunch period. The only knowledge of the playing that the employer had was the knowledge of the foreman of the garage who on occasion entered into the game.

If such sporadic playing of handball may be said to have been permitted by the employer, a matter not material in any event it was not by any affirmative word or action of the employer but by the mere omission of a specific prohibition against it.

The employees' compensation act provides that employers who elect to pay compensation as provided in the Act shall not be subject to any other liability for personal injury to any employee except as in the Act provided. Sec. 2838, Rev. Codes of Montana, 1935. And the Act provides that the employer shall be liable for the payment of compensation to the employee "who shall receive an injury arising out of and in the course of his employment." Sec. 2911, Rev. Codes. It is by reason of this limitation of the scope of the Act to injuries stemming from the employment that courts have deemed it necessary, or at least proper, to say when cases before them appear to be on or beyond the borderline of this field of the Act's operation, that the Act does not make the employer an insurer of his employees. This court has found it proper to say so in several cases, later ones being Griffin v. Industrial Accident Fund, 111 Mont. 110, 106 Pac. (2d) 346, and Sullivan v. Roman Catholic Bishop of Helena, 103 Mont. 117, 61 Pac. (2d) 838.

It may be that in a future time in the evolution of employer and employee relationships there may emerge some compre-

hensive plan of insurance compensation for death, accident and disease, no matter how caused, for the benefit of all engaged in industry, but when and if such all embracing protection shall be provided it must be by action of the law-making power of the state. The courts do not possess this power.

The terms ''arising out of'' and ''in the course of his employment,'' are used conjunctively and the burden of proof is upon a claimant to establish, by a preponderance of the evidence, that his injury resulted from (1) an industrial accident, (2) arising out of, and (3) in the course of his employment. Landeen v. Toole County Refining Co., 85 Mont. 41, 277 Pac. 615; Wirta v. North Butte Mining Co., 64 Mont. 279, 210 Pac. 332, 30 A. L. R. 964.

It ''arises out of the employment'' when the cause of the injury is from exposure to a hazard peculiar to the employment, or from a risk of the employment to which the workman is exposed by his employment. Wiggins v. Industrial Accident Board, 54 Mont. 335, 170 Pac. 9, L. R. A. 1918F, 932, Ann. Cas. 1918E, 1164.

An accident arises ''in the course of his employment'' if it occurs while the employee is performing some duty of his employment, or some act that is incidental to his work. Wirta v. North Butte Mining Co., supra.

These two rules are the cardinal principles of the Act. How is it possible to bring the case of respondent's injury received while he was playing handball, within these rules? How may it be said that his injury arose out of his employment as a truck driver? Or out of any employment that he might be called upon to perform for his employer in any capacity or in any branch of its business? To be compensable the injury must come from some hazard or risk of the employment. And to arise in the course of his employment it must occur while he is doing some act of his employment or something that is incidental thereto.

It is held that acts necessary to the life, comfort, and con-

venience of the employee are incidental to his employment. Such acts as obtaining a drink of water, obtaining, under some conditions, refreshment, attending to natural wants, even lighting a cigarette, have been held to be incidental to the employment. Whiting-Mead Commercial Co. v. Industrial Accident Commission, 178 Cal. 505, 173 Pac. 1105, 5 A. L. R. 1518. But no case holds, nor can it be said, that indulgence in a handball or like game is necessary to the life, comfort or convenience of the employee.

Unless then, the handball game was a part of his employment, or a risk of his employment, he may not recover. So clear it is that it was not a part of his employment that it is not contended for here. In fact respondent himself testified that it was not. But it is said that the injury received in the game arose from a risk of his employment as announced in the so-called horseplay cases. One solitary case similar upon the facts is found and cited to sustain the award here. The case is that of Thomas v. Proctor & Gamble Mfg. Co., 104 Kan. 432, 179 Pac. 372, 375, 6 A. L. R. 1145, which held that playing with a truck by girl employees during the lunch period, in which one of the girls was injured, might be taken out of the general rule that such injury in play is not compensable, by deciding it "upon much the same principle as employers are held liable for the result of horseplay which had grown into a custom."

Following the statement just quoted the Kansas court cites to support it, White v. Kansas City Stockyards Co., 104 Kan. 90, 177 Pac. 522. The White case holds that White, who was injured by "a mischievous prank perpetrated upon him" by fellow employees, was entitled to compensation. White was a victim, not a·participant, in the affair. These two Kansas cases are cited in Conklin v. Kansas City Public Service Co., 226 Mo. App. 309, 41 S. W. (2d) 608, which will be given consideration further on, but first:

A brief survey of the horseplay cases and the principle followed therein of "a risk of the employment" demonstrates

the murky nature of the reasoning in the Thomas case cited as authority to sustain the award here.

The cases within this category denied compensation to the employee injured thereby whether a participant in the sport or not, but the later cases follow the more liberal and proper rule that if the injured employee is attending to the duties of his employment, or performing some act incidental thereto, and is injured by horseplay *while not a participant therein,* his injury is compensable.

Justice Cardozo announced this modern rule applicable in such cases as follows:

"The claimant while engaged in the performance of his duties in the employer's factory was struck by an apple which one of his fellow servants, a boy, was throwing in sport at another, and as a consequence lost the better part of the sight of one eye. *He did not participate in the horseplay,* and had no knowledge of it till injured. The question is whether the accident was one 'arising out of and in the course of employment,' within the meaning of the statute * * *

"That it arose 'in the course of employment' is unquestioned. That it arose 'out of' employment, we now hold. The claimant's presence in a factory in association with other workmen involved exposure to the risk of injury from the careless acts of those about him." Leonbruno v. Champlain Silk Mills, 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522. Emphasis supplied.

And Justice Cardozo further said, 229 N. Y. 470, 128 N. E. at page 711, 13 A. L. R. 522, at page 523: "This case is not within the principle of Matter of De Filippis v. Falkenberg, 219 N. Y. 581, 114 N. E. 1064, and Matter of Stillwagon v. Callan Brothers, 224 N. Y. 714, 121 N. E. 893, where the claimant, joining in the horseplay, had stepped aside from the employment. (Citing cases.) This case is rather within the principle of Matter of Verschleiser v. [Joseph] Stern & Son, 229 N. Y. 192, 128 N. E. 126, where the claimant, while engaged in

his work, was assaulted by fellow workmen, who wished to tease and harass him.''

A late case in California, Pacific Employers Ins. Co. v. Industrial Accident Commission, 26 Cal. (2d) 286, 158 Pac. (2d) 9, 159 A. L. R. 313, holds that injury through horseplay of fellow employees throwing hard rolls at each other in clearing up a hotel dining room, *to a nonparticipating employee* struck in the eye by a roll, is one arising out of the employment even though the horseplay was neither customary nor permitted by the employer.

In the case of Hartford Accident & Indemnity Co. v. Cardillo, 310 U. S. 649, 60 S. Ct. 1100, 84 L. Ed. 1415, Id., 72 App. D. C. 52, 112 F. (2d) 11, 15, the United States court of appeals for the district of Columbia, states the rule applicable to these cases, that the danger of injury from the horseplay of fellow employees constitutes a risk of the industry, saying, *"So long as the claimant is merely the victim, not a participant,* it makes little difference whether the fighting is by fellow employees or strangers to the work or what is the immediate occasion for the dispute. The same is true in horseplay. It is sufficient that the work brings the claimant within the range of peril by requiring his presence there when it strikes.'' (Emphasis mine.)

The annotation in 13 A. L. R. beginning on page 540 cites cases from many states, as well as from England, Canada, and Scotland, the earlier of the cases denying compensation to employees injured in horseplay, as not arising out of his employment, and the later cases generally holding that an employee injured in horseplay in which he was not a participant, may be compensated as an injury received from a risk of the employment. A like collection of later cases is found in 159 A. L. R. in the annotation to Pacific Employers Ins. Co. v. Industrial Accident Commission, supra, of twenty-one pages beginning at page 319, adhering to the same pattern, some cases denying compensation regardless of whether the injured one participated or not, and the others following the modern

rule that compensation is allowed if the injured employee did not take part in the skylarking activities, but was attending to his duties when injured. In the more than one hundred cases from many states, and from England, whence our Workmen's Compensation Act came, cited in these annotations not one is cited holding that a player and participant in the game who is injured therein may be compensated.

In Re Petersen's case, 138 Me. 289, 25 A. (2d) 240, it was specifically found that Petersen "was the innocent victim and that his only participation in the incident was to protect himself." The case is strictly in accord with the principle that an employee who is injured while he is voluntarily participating in the activity may not be compensated because his injury did not arise out of nor in the course of his employment. The case is cited in the annotation in 159 A. L. R. in support of this established modern rule.

The industrial accident board in its decision and award referred to the case of Conklin v. Kansas City Public Service Co., supra, and said:

"A search of authorities fails to disclose any cases that are exactly similar so far as facts are concerned, with the possible exception of Conklin v. Kansas City Public Service Company, above mentioned, but all authorities tend toward the view that accidents are compensable when the happening occurs on the premises of the employer, even though the employee may be engaged in performing a personal act when injured.

"The Industrial Accident Board of Montana does not believe that the Legislature intended to provide compensation for workmen injured while at play, * * *."

The Conklin case cites and relies on the Kansas cases of Thomas v. Proctor & Gamble Co., supra, and White v. Kansas City Stockyards Co., supra, to support its decision awarding compensation to Conklin who was injured while watching an indoor ball game. The case is beside the point here for the injured employee there was merely watching the game of

indoor baseball, not a participant therein, and so, if it could be said that during his lunch period on the premises, it was in the course of his employment, he might be within the later and more liberal rule that applies in the horseplay cases, that is, that to an employee not participating in the play, it was a risk of the employment.

Furthermore, the employer there encouraged the game of indoor baseball to be played in its paint shop, between organized teams of the crafts employed and on one occasion promoted a deluxe game and paid full time to all the players and to the employees who attended the game. The court held that the. employer sponsored and encouraged the game and made it an incident of the employment. While the Conklin case is not applicable here it is interesting to note that the Supreme Court of Missouri puts a boundary against any extension of its application, and courts of other states where it has been cited give it but scant and cold respect. It is not a decision of the Supreme Court of Missouri but merely of the Kansas City Court of Appeal. The Supreme Court of that state said of it: "To go further than in that case would be error." Dunnaway v. Stone & Webster Engineering Corp., 227 Mo. App. 1211, 61 S. W. (2d) 398, 400. South Carolina held it "inapplicable" to the case at bar in Pate v. Plymouth Mfg. Co., 198 S. C. 159, 17 S. E. (2d) 146, which was the case of an employee injured coming from a ball game partly financed by the employer. And Colorado not quite so polite as the southern court said: "The reasoning of the Conklin Case is far from convincing, but, assuming otherwise, the diversity of facts makes it inapplicable." Industrial Commission of Colorado v. Murphy, 102 Colo. 59, 76 Pac. (2d) 741, 742, 115 A. L. R. 990.

The New Jersey court said the Conklin case is limited to its own facts, and then holds that even where recreational facilities are provided by the employer an injury received by an employee in an impromptu ball game during the lunch hour is not compensable as it did not arise out of the employ-

ment. Theberge v. Public Service Elec. & Gas Co., 51 A. (2d) 248, 25 N. J. Misc. 149.

The Workmen's Compensation Act provides that it shall be liberally construed. But this does not permit the court to disregard the plain provisions of the Act. Davis v. Industrial Accident Board, 92 Mont. 503, 15 Pac. (2d) 919. And as the court recently said, "the requirement of liberal construction of the Act does not mean that it should be construed in each individual case so as to favor a claimant regardless of the effect of the decision upon the Act as a whole or upon its application to future cases. It means that it should be construed in such a way as to give proper effect to the general legislative purposes of the Act as a whole." Hendy v. Industrial Accident Board, 115 Mont. 516, 146 Pac. (2d) 324, 325.

"Aye, there's the rub," "the effect of the decision * * * upon its application to future cases," or as expressed by Portia, " 'Twill be recorded for a precedent and many an error by the same example will rush into the state."

The Act is the measure of the power of the industrial accident board to award compensation. It is the measure of the power of the court in a review of the board's award. In administering the Act, the board can only award compensation to an employee for injuries received in an industrial accident "arising out of and in the course of his employment." The court can only sustain an award for such an injury. Injuries that arise in some activity outside the employment, or occur not in the course of his employment, may not be compensated. The Act is not an insurance law.

The fact that the game was played and injury received during the lunch period, and the employee was subject to call to duty as truck driver during that period, if an emergency had arisen to require it, is of no importance one way or the other. He was not called to duty. And if it be conceded that "they also serve who only stand and wait," it appears that respondent did not "stand and wait" but left his service and departed from his employment to voluntarily play a game

that was no part of his employment and therein suffered the distressing and regrettable injury, an injury that appeals powerfully to man's natural sympathy and sorrow for one so unfortunate. But such sympathy and compassion is not permitted to influence those who must administer the law, nor permit those who interpert it to disregard both the letter and the spirit of the Act.

Further, the "period of employment" is not synonymous with the "course of employment." Potter v. Realty Trust Co., 60 Idaho 281, 90 Pac. (2d) 699, 702; Pacific Tel. & Tel. Co. v. White, 9 Cir., 104 F. (2d) 923. Whether the game was played during the period of employment, or during the period of intermission from employment, or after the employment had entirely ceased, is beside the point. Unless the playing of the game was a duty of his employment, or an act incidental thereto, the injury received in playing it did not "arise out of" and it was not received "in the course of" his employment.

There are some cases that hold that where an employer, for purposes of advertising his business and creating good will, or to render in certain kinds of employment his employees more fit, encourages and aids athletic contests and games, the same become an incident to and therefore a part of the employment. Such is the case of Le Bar v. Ewald Bros. Dairy, 27 Minn. 16, 13 N. W. (2d) 729, 730, cited in the concurring opinion herein. There the Ewald Brothers, a partnership, running a large dairy, had encouraged a team for the playing of softball in which the claimant was injured; the firm also encouraged and aided baseball teams, bowling teams and others, expending as high as $1,000 a year encouraging and assisting such games. The firm furnished balls, bats and other equipment, including shirts with the name "Ewald" in large letters on the back, to the softball team on which claimant played and in which he was injured, and paid a $15 entrance fee for the team to play on the city park grounds. The court in that case in considering whether the injury arose out of and in the

course of the employment, said: "This could only occur if the game then being played was incident to and a part of the partnership's business." It held that it was such as an advertising feature of its business.

Likewise, in the case of Holst v. New York Stock Exchange, also cited in the concurring opinion herein, the record disclosed that the employer received the receipts of the games played, and paid the deficit if such occurred. The employer aided and encouraged games of baseball, soccer and other games for advertising or health purposes, and the court said [252 App. Div. 233, 299 N. Y. S. 256]: "The maintenance of the teams was a matter of business, not of charity or benevolence."

In the Utah case also cited, Salt Lake City v. Industrial Commission, 104 Utah 436, 140 Pac. (2d) 644, a city fireman was injured in playing handball while on duty. The opinion in that case states that the employer city provided a handball court for playing the game and encouraged the firemen to play the game as a part of their required exercise to render them fit for duty, and it was held that the game was thus an incident to and a part of the fireman's employment.

In the Saratoga Springs Commission case, also cited, the locker boys were given specific permission to use the swimming pool. The Saratoga Springs Commission case cites Puisinski v. Transit Valley Country Club to support its decision, but an examination of that case, which is also cited in support of the decision here, shows the "claimant and other caddies were encouraged to play * * * not only for their own amusement but because the practice tended to make them more efficient caddies, and that under a rule of the employer they were then under the rule and supervision of the caddy master." [283 N. Y. 674, 28 N. E. (2d) 401.] This made the practice a part of their employment.

The teachers' association meeting where the teacher fell and broke her leg (Dearing v. Union Free School District No.

1.), was an incident and part of her employment as a teacher. It is not neecssary to further analyze the cited cases.

An examination of all cases involving injury to an employee while playing a game, discloses that none of them except the case of Thomas v. Proctor & Gamble Mfg. Co., supra, hold the injury to be compensable unless the game has been so encouraged and aided by the employer as to become an incident to and a part of his employment.

I cannot see that an injury received in a game played in the brief time available from a half hour lunch time, not sponsored or encouraged by the employer, unknown to it, except from the knowledge imputed to it, if it was imputed, by the knowledge of a garage foreman, a game which respondent said was no part of his employment, can be said to arise out of and in the course of respondent's employment as a truck driver.

The judgment of the district court should be reversed.

Mr. Justice Choate:

I concur in the dissenting opinion of Mr. Justice Gibson.